IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ERIC NEUER, doing business as Prairie Point Orthodontics, P.A., on behalf of itself and all those similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**DENTAL RESOURCE SYSTEMS, INC.,** *et. al.*,<br><br>**Defendants.** | Case No. 14-2319 |

## MEMORANDUM AND ORDER

The matter before the court is on defendants' motion to dismiss (Doc. 19), in which defendants argue that the court lacks jurisdiction to hear this case and that plaintiff has failed to state a claim upon which relief may be granted. Related to that motion, plaintiff filed a motion for leave to file a surreply (Doc. 23).

**I. Case Summary**

Plaintiff Eric Neuer, doing business as Prairie Point Orthodontics, P.A., and on behalf of itself and all those similarly situated, filed this class action against defendants Dental Resource Systems, Inc. ("DRS"), a Delaware corporation; John Harris, an individual residing in the state of Florida; Richard Amy, an individual residing in the state of California; and Mark Montgomery, an individual residing in the state of Oregon. Defendant Harris is the president and chief executive officer of DRS and defendants Amy and Montgomery are licensed dentists who appear to work for DRS in some capacity. Plaintiff primarily alleges defendants faxed unsolicited advertisements to his business in violation of

-1-

the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. He also brings claims of conversion, negligence, and negligence per se.[1]

## II. Facts

Plaintiff alleges the following facts. On approximately twenty-one occasions between March 1, 2012 and December 18, 2014, defendants faxed three different unsolicited advertisements to plaintiff, at his business. The three faxes advertise a dental service and textbook authored (in part) by defendant Montgomery, appear in letter form, and are signed by defendants Harris, Montgomery, and Amy, respectively. (Docs. 17-1, 17-2, and 17-3.) Aside from the second fax's different letterhead, the layout and form of each are virtually identical, each including DRS's name (including its acronym form), address, and website. Every fax also includes the same opt-out language at the bottom of the fax. As for damages, plaintiff pleads statutory damages pursuant to the TCPA and actual damages in the form of consumed toner, paper, and fax machine memory.

## III. Legal Standards — Motion to Dismiss

### A. Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2)

Plaintiff has the burden to establish personal jurisdiction over each defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Because the court decides this motion on the basis of affidavits and other written materials, plaintiff only needs to make a prima facie showing of personal jurisdiction. *Id.* The court assumes the allegations in the complaint are true to the extent they are not controverted, and resolves all factual disputes in plaintiff's favor. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (discussing a motion to dismiss for lack of personal jurisdiction and stating "[w]e must resolve any factual disputes in the plaintiff's favor"). "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case

---

[1] Plaintiff originally brought a claim of intrusion upon seclusion. (*See* Doc. 1.) However, plaintiff amended his complaint (Doc. 17), dropping that claim and substituting a claim of negligence per se.

demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Proud Veterans, LLC v. Ben-Menashe*, 12-CV-1126-JAR, 2014 WL 791200, at *4 (D. Kan. Feb. 27, 2014) (quoting *OMI Holdings*, 149 F.3d at 1091)).

### B. Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).  The Supreme Court set forth the standard for pleadings in *Bell Atlantic Corp. v. Twombly*, stating that pleadings should include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The pleading should include "more than labels, conclusions, and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff." *Burnett v. Mtg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). And the court must "resolve all reasonable inferences in the plaintiff's favor." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126–27 (10th Cir. 1998)).

## IV. Analysis

Defendants argue the court lacks personal jurisdiction over them. The court has federal question subject matter jurisdiction. 28 U.S.C. § 1331; *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012). While there are generally two types of personal jurisdiction (general and specific), plaintiff's response only addresses specific jurisdiction. The court will therefore only analyze specific jurisdiction.

**A. Specific Jurisdiction**

The court's personal jurisdiction over defendants depends on the law of the forum state, unless the federal statute in question authorizes nationwide service of process. Fed. R. Civ. P. 4(e); *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). In this case, plaintiff alleges a violation of the TCPA, which does not authorize nationwide service of process in private actions. 47 U.S.C. § 227; *Sojka v. Loyalty Media LLC*, No. 14-CV-770, 2015 WL 2444506, at *2 (N.D. Ill. May 20, 2015). Therefore, the court must determine: (1) whether the defendant's conduct falls within the forum state's long-arm statute, and (2) whether the exercise of personal jurisdiction over the defendant satisfies the constitutional guarantee of due process. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2008)). Because Kansas courts construe the long-arm statute to the same limits allowed by federal due process, the court proceeds directly to the due process inquiry. *OMI Holdings*, 149 F.3d at 1090.

Analyzing due process is a two-step process. First, the court must find that the defendant has "minimum contacts" with the forum state such that the defendant "should reasonably anticipate being haled into court there." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (quoting *OMI Holdings*, 149 F.3d at 1091). Second, assuming those minimum contacts exist, the defendant's contacts must "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

*1. Minimum Contacts*

In the Tenth Circuit, a court has specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI Holdings*, 149 F.3d at 1091

(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  The Tenth Circuit has explained how to evaluate whether a defendant "purposefully directed" his activities at the forum:

> In the tort context, we often ask whether the nonresident defendant "purposefully directed" its activities at the forum state . . . In all events, the shared aim of "purposeful direction" doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state.

*Dudnikov*, 514 F.3d at 1071 (internal citations omitted).  A defendant must engage in purposeful conduct that shows the intent to serve the market of the forum state, such as advertising in the forum state or establishing channels for providing regular advice to customers in the forum state.  *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 109 (1987); *see also Sojka*, 2015 WL 2444506, at *2.

Defendants argue the factual allegations in the amended complaint fail to establish the minimum contacts required for this court to exercise personal jurisdiction over them.  As noted earlier, plaintiff has the burden to establish jurisdiction.  *OMI Holdings*, 149 F.3d at 1091.  Plaintiff provides the faxes he received from defendants.  Those faxes identify each of the named defendants, contain plaintiff's Kansas-based fax number evidenced by the 913 area code, and state "[t]ransmitted by DRS."  The faxes are undeniably advertisements for two different dental-related products.  As such, defendants demonstrated intent to serve the market of Kansas.  *Asahi Metal*, 480 U.S. 102, 109 (1987); *But cf. Sojka*, 2015 WL 2444506, at *2 ("[D]efendants have not purposefully availed themselves of the Illinois forum because neither markets to or solicits sales in Illinois.").  Given the personalized nature of the faxes (addressing plaintiff by name), defendants did not fax these advertisements to random or fortuitous numbers but specifically to dental offices.  And any redemption of the textbook offers by plaintiff, for instance, would result in the hardcover textbook being physically delivered to plaintiff in Kansas.  These facts demonstrate that defendants should have foreseen being haled into a Kansas court

as a result of intentionally soliciting Kansas residents as potential customers by faxing them advertisements for products, free or not. For all these reasons, defendants have purposefully directed their activities (faxing advertisements) to residents of the forum state (Kansas), and the causes of action (e.g. violation of the TCPA, conversion of paper and toner) arise out of or relate to defendants' actions (faxing advertisements).

### 2. Traditional Notions of Fair Play and Substantial Justice

The court next considers whether the exercise of personal jurisdiction would comport with fair play and substantial justice. *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007). This case-by-case determination requires an inquiry into the reasonableness of exercising personal jurisdiction over a nonresident defendant. *Id*. at 1292. The court assesses reasonableness by weighing (1) the burden on defendant; (2) the forum state's interest in resolving the dispute; (3) plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id*. Defendants bear the burden of showing jurisdiction would be unreasonable. *Dudnikov*, 514 F.3d at 1080 ("[W]e are cognizant of the fact that, with minimum contacts established, it is incumbent on defendants to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'") (citation omitted).

Defendants asserted no argument as to whether exercising jurisdiction in this case is reasonable. Nevertheless, because this inquiry relates to the constitutional right of due process, the court must make this inquiry and finds as follows.

### i. The Burden on Defendant

The first factor weighs slightly in favor of defendants because the cost to each defendant to litigate the action in Kansas is probably higher than it would be to litigate in Delaware (DRS's state of incorporation), Florida (defendant Harris's domicile), California (defendant Amy's domicile), or Oregon (defendant Montgomery's domicile).  Because all defendants are domiciled in different states, even if plaintiff filed in one of those states, the costs to the other defendants would still be higher than defending the suit in their home state.  Accordingly, this factor weighs only slightly, if at all, in defendants' favor.

### ii. The Forum State's Interest in Resolving the Dispute

The second factor is the State of Kansas's interest in resolving the case.  "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."  *Cargill Meat Solutions Corp. v. Premium Beef Feeders, LLC*, No. 13-CV-1168-EFM-DJW, 2014 WL 172197, at *4 (D. Kan. Jan. 15, 2014).  Because plaintiff is a Kansas resident and the torts occurred in Kansas, the court finds that Kansas has a substantial interest in resolving cases of intentional torts committed within its boundaries.

### iii. Plaintiff's Interest in Receiving Convenient and Effective Relief

The third factor "hinges on whether the Plaintiff may receive convenient and effective relief in another forum."  *OMI*, 149 F.3d at 1097.  Plaintiff's chances of recovery on that claim will not be greatly diminished if it is forced to litigate in another forum because the TCPA is a federal law.  But because the alleged tort occurred in Kansas, Kansas courts are in the best position to enforce Kansas tort law.  The court finds this factor weighs in favor of plaintiff.

### iv. The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies

The fourth factor analyzes whether Kansas would best further the interstate judicial system's interest in obtaining the efficient resolution of controversies.  In analyzing this factor, courts generally

consider (1) the location of witnesses, (2) where the underlying wrong occurred, (3) what substantive law governs the case, and (4) whether jurisdiction is necessary to prevent piecemeal litigation. *See id*. The first consideration does not favor either party, as it is unclear whether there are any witnesses outside of the parties. The second consideration favors plaintiff because the alleged wrong(s) occurred in Kansas. As to the third consideration, the court finds it does not favor either party because neither party cites any case law or analysis on this point. Finally, the fourth consideration favors neither party—indeed, a class action is designed to prevent piecemeal litigation. For these reasons, the court determines that the interest of the interstate system is best served by adjudicating this suit in Kansas.

*v. States' Shared Interest in Furthering Policies*

The fifth and final factor is the shared interest of the states in furthering fundamental substantive social policies. The court sees no facts that favor either party on this issue. Accordingly, the court finds that its exercise of jurisdiction over defendants is reasonable.

**B. Fiduciary Shield Doctrine**

Defendants also argue the fiduciary shield doctrine precludes jurisdiction over defendants Harris, Montgomery, and Amy because they were acting in their official capacity with DRS. The parties dispute whether the fiduciary shield doctrine has been adopted in Kansas. Plaintiff provided a summary of the fiduciary shield doctrine's history in the Tenth Circuit (*see* Doc. 21 at 4–6), and defendants countered with a four-case string citation to support the conclusory statement "Kansas has in fact adopted the fiduciary shield doctrine" (Doc. 22 at 2–3). Plaintiff filed a motion for leave to file a surreply to rebut the previously uncited cases in that string-cite. (Doc. 23.) After reviewing the case law cited by the parties, the court determines a surreply is unnecessary.

The court need not analyze whether the fiduciary shield doctrine has been adopted by Kansas because the court determines that, even if Kansas had adopted the fiduciary shield doctrine, defendants

Harris, Montgomery, and Amy would not be protected by it. Plaintiff's allegations suggest each person-defendant was the primary participant in the alleged tortious and intentional faxing of unsolicited advertisements. *See Retail Software Servs., Inc. v. Lashlee,* 854 F.2d 18, 22–24 (2d Cir. 1988) (rejecting the fiduciary shield doctrine because directors and officers were "primary actors in the transaction" giving rise to the suit); *Traffas v. Bridge Capital Corp.*, No. 90-1304-C, 1990 WL 251740, at *8 (D. Kan. Dec. 3, 1990); *Ceva Labs., Inc. v. Wilson*, No. 88-2609-S, 1989 WL 106719, at *2 (D. Kan. Aug. 21, 1989) ("[T]he fiduciary shield doctrine does not preclude this court from exercising personal jurisdiction over defendant Wilson under the 'tortious acts' provision of the Kansas Long-Arm Statute . . ."). The court can reasonably infer that the faxes were sent by the person who signed the faxed advertisement. Here, defendants Harris, Montgomery, and Amy each signed one of the faxed advertisements. The fiduciary shield is inapplicable on these facts.

For these reasons, the court exercises personal, specific jurisdiction over all defendants.

**C. Failure to State a Claim**

Defendants argue plaintiff fails to allege facts sufficient to state a claim. With respect to the TPCA claim, the court finds plaintiff's claim under the TCPA is plausible on its face, as defendants sent or caused to be sent multiple unsolicited advertisements by facsimile to plaintiff at his business. The court will now review plaintiff's remaining claims of conversion, negligence, and negligence per se.

*1. Conversion*

Under Kansas law, conversion is "the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights." *Becker v. Denison Bancshares, Inc.*, 193 P.3d 529 (table), 2008 WL 4570658, at *3 (Kan. Ct. App.

2008) (citation omitted). Defendants make three arguments that plaintiff has not established a claim of conversion.

First, defendants argue they did not come into *physical* possession of plaintiff's property or that plaintiff was dispossessed of his property. Legally speaking, *physical* possession is not an element of conversion under Kansas law. *See Becker*, 193 P.3d at 529; *see also* Restatement (Second) of Torts § 226 cmt. b (1977) (recognizing conversion by destruction or alteration, even where defendant is not in possession of the chattel). Practically speaking, defendants *did* physically possess plaintiff's fax machine—although from a distance—for at least the time it took to print the fax because plaintiff could not receive other faxes, as the line would be busy. And defendants permanently dispossessed plaintiff of his fax machine's toner and paper.[2] That is "a plausible allegation; once paper has had an advertisement printed upon it, it is no longer useable for other purposes, nor can the ink be recovered for reuse." *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 782 (N.D. Ill. 2008).

Second, defendants argue that a one-page advertisement is a *de minimus* exercise of dominion and control which cannot constitute a conversion action, citing four out-of-state cases in support. The court is unpersuaded. The parties did not cite nor could the court find a Kansas case that dismissed a claim of conversion because the converted property had no actual value or required the converted property to exceed some minimum-value threshold. The court declines to impose a value requirement now. *See generally Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, DDS, PA*, 781 F.3d 1245, 1259 (11th Cir. 2015) (holding that, under Florida law, conversion is an appropriate cause of action even if the specific property converted has no actual value). Even if the court were to agree that a one-page advertisement is a *de minimus* harm, defendants sent twenty-one faxes to plaintiff. The court doubts that an unsolicited twenty-one page fax would qualify as *de minimus*. Furthermore, plaintiff

---

[2] With respect to conversion of the (electronic) memory in plaintiff's fax machine, the court makes no findings at this time.


brings a class action, and the purpose of class actions is to allow individual plaintiffs to bring a joint claim because bringing the suits individually would be cost-prohibitive, especially where each plaintiff suffered minimal loss. *See Centerline*, 545 F. Supp. 2d at 782 (allowing conversion claim based on a one-page facsimile advertisement because class treatment is regularly afforded in cases where no individual plaintiff has suffered any great loss).

Third, defendants argue plaintiff is required to demand return of the property. Defendants incorrectly interpret Kansas law. Such a demand is an element only where the defendant is in *lawful* possession of the property—for instance, as a bailee or trustee. *See, e.g.*, *J&J Wholesale, Inc. v. Euro-American Brands, LLC*, 86 P.3d 1026 (table), 2004 WL 720145, at *2 (Kan. App. 2004) ("[D]emand is a necessary element of conversion where, as here, the goods are lawfully in the possession of the other party."); *see also* Restatement (Second) of Torts § 237 (1965) ("One in possession of a chattel *as bailee or otherwise* who, on demand, refuses *without proper qualification* to surrender it to another entitled to its immediate possession, is subject to liability for its conversion.") (emphasis added). That is not the case here.

For all of these reasons, the court finds plaintiff has pleaded a plausible claim of conversion. The court will next address plaintiff's separate claims of negligence and negligence per se together.

### 2. *Negligence and Negligence Per Se.*

In Kansas, "a plaintiff in a negligence action must prove four elements: a duty owed to the plaintiff, breach of that duty, causation between the breach of duty and the injury to the plaintiff, and damages suffered by the plaintiff." *Shirley v. Glass*, 308 P.3d 1, 6 (Kan. 2013). Likewise, the elements of negligence per se are (1) a violation of a statute, ordinance, or regulation, and (2) damages which result from the violation. *OMI Holdings, Inc. v. Howell*, 918 P.2d 1274, 1296 (Kan. 1996).

Additionally, plaintiff must establish that the legislature intended an individual right of action for injury arising out of the statutory violation. *Cullip v. Domann*, 972 P.2d 776, 782 (Kan. 1999).

Defendants argue plaintiff has failed to establish the duty of care element in a negligence action. The TCPA, defendants argue, does not give rise to a negligence claim. Defendants rely on *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, for the proposition that sending unsolicited faxes does not give rise to a common law claim of negligence. 135 S.W.3d 365, 395–96 (Tex. App. 2004). *Chair King* is inapplicable because Texas law does not recognize negligence claims that are outside of Texas common law except in very limited circumstances. *Id*. Kansas does recognize recovery under the TCPA. *See Critchfield Physical Therapy v. Taranto Grp., Inc.*, 263 P.3d 767, 775 (Kan. 2011) (noting that other states prohibit private actions under the TCPA and "[a]s a consequence, decisions in other states, while possibly persuasive in their reasoning, are not binding on courts in this state"). The question therefore is whether the TCPA may be used to establish a duty and breach of duty in a negligence action.

Defendants rely on *Sailola v. Municipal Services Bureau*, where the court found that plaintiff had not demonstrated the TCPA provides a duty of care sufficient for a negligence cause of action. No. 13-00544 HG-RLP, 2014 WL 3389395, at *9 (D. Haw. July 9, 2014). This court is not bound by *Sailola*. However, this court is bound by *Shirley*, which discusses a duty imposed on a defendant by statute. 308 P.3d at 6.

In *Shirley*, the court concluded a firearm-transfer statute may be used by a plaintiff to establish a duty and a breach of duty in a negligence action. *Id*. at 6–10. The court stated: "The proper inquiry is therefore not whether the class of persons to be protected by a statute is small or large, but whether the statute intends to protect the class, even if it includes all members of society, from a particular kind of harm." *Id*. at 6–7. But the court continued:

> There are certainly some statutes that create no duty of conduct toward the plaintiff and afford no basis for the creation of such a duty by the courts. For example, statutes such as those restricting various activities on Sunday are obviously intended only to protect the community at large in terms of tranquility and morality rather than to protect the safety of any particular individuals. If a statute prohibits mowing lawns on a Sunday and an individual nevertheless mows his or her lawn on Sunday and injures a passerby, the statutory violation is unlikely to serve as evidence of a duty or its breach because the intent of the statute was not to protect public safety.

*Id*. The court eventually relied on the firearm statute's purpose of protecting the public in allowing a plaintiff to use the statute to prove a duty and breach of that duty in a negligence claim.

*Shirley* appears to implicitly recognize that statutes generally impose *some* duty on people—the duty to do or refrain from doing something. What the Kansas Supreme Court recognizes is that not all duties imposed by statute can give rise to a negligence cause of action, thereby drawing a line between the protection of a community's tranquility (no duty) and the protection of the public's safety (duty).

The key question here is where the TCPA's duty falls on that scale: Is the TCPA protecting the public in terms of tranquility or protecting the public in terms of safety? Defendants argue the TCPA does not protect public safety, and therefore it does not impose a duty on them. That rationale has some merit, but the court declines to construe *Shirley* so narrowly. "[T]he primary purpose of the TCPA is to prevent businesses from shifting their advertising costs to the recipients of unsolicited fax advertisements." *Critchfield*, 263 P.3d at 774 (citing *Phillips Randolph v. Adler-Weiner Research Chicago*, 526 F. Supp. 2d 851, 852 (N.D. Ill. 2007)); *see also* H.R. Rep. No. 317, at 10, 102d Cong., 1st Sess. 25 (1991). Protecting consumers from bearing the cost of a defendant's unsolicited advertisements seems, in the court's view, closer to public safety than tranquility. The court therefore finds that, in Kansas under *Shirley*, the TCPA imposes a duty on defendants sufficient to give rise to claims of negligence and negligence per se.

**V.  Conclusion**

The court has personal jurisdiction over all defendants, as they have minimum contacts with Kansas by purposefully directing their conduct (sending faxes) at Kansas in order to solicit business from Kansas residents.  The fiduciary shield does not preclude jurisdiction over defendants Harris, Montgomery, and Amy, as each sent a fax or caused a fax to be sent, as evidenced by the signature at the bottom of their respective fax.  Finally, plaintiff has stated claims that are plausible on their face.

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss (Doc. 19) is denied.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file a surreply (Doc. 23) is denied as moot.

Dated this 27th day of July, 2015, at Kansas City, Kansas.

        s/ Carlos Murguia
        **CARLOS MURGUIA**
        **United States District Judge**